**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KELLY B. LYLES,**<br>**Plaintiff,** | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-3974** |
| **TAYLOR REAL ESTATE, *et al.*,**<br>**Defendants.** | : | |

**MEMORANDUM**

**SCOTT, J.** **AUGUST 26 2026**

Plaintiff Kelly B. Lyles filed a *pro se* Complaint alleging civil rights violations by Defendants Taylor Real Estate, Dylan Taylor, Miles Taylor, an unnamed municipal court judge in Philadelphia, Abramson & Deneberg, P.C., and David H. Deneberg. (*See* ECF No. 1.) He also seeks leave to proceed *in forma pauperis*. (*See* ECF No. 5.) For the following reasons, the Court will grant Lyles leave to proceed *in forma pauperis* and dismiss the Complaint on statutory screening for failure to state a claim, *see* 28 U.S.C. § 1915(e)(2)(B)(ii).

## I. FACTUAL ALLEGATIONS[1]

Lyles provides little factual information in narrative form in his Complaint. He alleges that his civil rights claims in this action arose from events that occurred on May 12, 2026, in the

---

[1] The factual allegations in this Memorandum are taken from Lyles's Complaint ("Compl.") (ECF No. 1), consisting of a form complaint available for use by unrepresented litigants. Lyles also submitted 154 pages of exhibits. (*See generally* ECF No. 1-1.) The Court adopts the sequential pagination assigned by the CM/ECF docketing system. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up as needed. The Court may consider matters of public record when conducting a screening under § 1915. *Castro-Mota v. Smithson*, No. 20-940, 2020 WL 3104775, at *1 n.3 (E.D. Pa. June 11, 2020) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).

Landlord/Tenant Division of the Municipal Court in Philadelphia.[2] (Compl. at 4.) He states that the judge who was presiding and "the lawyer" (presumably, the attorney representing the landlord in his case) colluded together. (*Id.*) Lyles surmises that they colluded because "[w]hy would there need to be a meeting to discuss whethe[r] my medical issue (acute kidney infection) could be discussed." (*Id.*) Lyles also contends that the collusion occurred when the judge and lawyer shared "a secret free masonry religious look." (*Id.*) He further asserts that the notes of testimony from the hearing on that day reflect that "there is no way [he] should have lost." (*Id.*) Lyles is disabled and on oxygen, has suffered from an acute kidney infection, and appears to claim that the property he leased was infested with bugs. (*Id.* at 5; ECF No. 1-1 at 20, 74-79.) In addition to the landlord's action seeking unpaid rent and for Lyles to vacate the property, Lyles filed his own lawsuit in Small Claims Court seeking money damages due to alleged "infestation and discrimination." (ECF No. 1-1 at 8-17, 20.)

In the civil action he filed in this Court, Lyles asserts that Defendants violated his rights to due process and discriminated against him on the basis of race and disability.[3] (Compl. at 5; ECF No. 1-1 at 1.) As relief, he requests that this Court investigate the events, which Lyles characterizes as "criminal." (Compl. at 5.)

---

[2] Lyles includes documents filed in Municipal Court cases *Taylor v. Lyles*, LT-26-03-25-6163 (M.C. Philadelphia), and *Lyles v. Taylor*, SC-26-03-04-3231 (M.C. Philadelphia) among his attachments. (ECF No. 1-1 at 8-17, 20-21.)

[3] Although Lyles has checked the box indicating that he wants to invoke the Court's diversity jurisdiction, (*see* Compl. at 3), he has not asserted any state law claims. The Court's review does not reveal any such claims, either. Lyles asserts that he and the Defendants are citizens of Pennsylvania, (*id.* at 4), which would destroy diversity jurisdiction, in any event.

## II. STANDARD OF REVIEW

Because Lyles does not appear able to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*. Under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court must dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Lyles is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

### A. Improper Relief

As a threshold matter, this Court cannot provide the relief Lyles expressly seeks in his Complaint—an investigation into "criminal" events that allegedly occurred in the Municipal Court—because federal courts do not independently investigate civil rights claims. *See Hadden v. Hershey*, No. 22-1600, 2023 WL 5207932, at *2 (D.N.J. Aug. 14, 2023) ("Federal courts are

not authorized to independently investigate civil rights claims on behalf of *pro se* litigants"). Rather, the federal court system depends on a neutral and detached judiciary, not one that performs investigations. "[I]n both civil and criminal cases, in the first instance and on appeal ..., [courts] rely on the parties to frame the issues for decision" and a federal court accordingly acts as a "neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (citation omitted). To the extent that Lyles's request for an investigation could generously be construed as asking the Court to order a law enforcement agency to act, the Court cannot entertain that request, either. Courts lack jurisdiction to require a law enforcement agency to investigate a party's claims. *Evans-Sampson v. U.S. Dep't of Justice*, No. 21-1834, 2022 WL 883939, at *2 (3d Cir. Mar. 24, 2022) (*per curiam*) (affirming dismissal of complaint seeking injunction requiring Department of Justice to investigate claims because "federal courts lack jurisdiction to compel an investigation by a law enforcement agency"). Lyles's request for the Court to conduct or order a criminal investigation will be dismissed.

In addition, insofar as Lyles's Complaint could be understood to contain a request for the Court to enjoin proceedings in state court, the Court would be prohibited from doing so by the provisions of the Anti-Injunction Act, 28 U.S.C. § 2283.[4] That Act "prohibits injunctions having the effect of staying proceedings in state courts except 'as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 103 (3d Cir. 2002) (quoting 28 U.S.C. § 2283)). "The Act 'is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of [the] three specifically defined

[4] The Court observes that the docket in *Taylor v. Lyles*, LT-26-03-25-6163, reflects that Lyles has appealed the May 12, 2026 order issued in the Landlord Tenant Division and the matter is set for trial in the Court of Common Pleas on September 4, 2026. *Id.* (Docket entry Aug. 10. 2026).

exceptions.'" *Id.* (quoting *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970)); *Norton v. Adams*, No. 25-1216, 2025 WL 1951938, at *2 (M.D. Pa. July 16, 2025) (same). "The Anti-Injunction Act precludes a federal court from enjoining state court eviction or foreclosure proceedings." *Underwood v. Habitat for Humanity*, No. 25-0799, 2025 WL 2396505, at *2 (E.D. Pa. Aug. 18, 2025) (quoting *McMillan v. Nationstar Mortg. Co.*, No. 20-1321, 2020 WL 4201605, at *2 (E.D. Pa. July 22, 2020) (citing cases)); *Hand v. City of Philadelphia*, No. 25-6863, 2026 WL 510569, at *4 (E.D. Pa. Feb. 24, 2026) (dismissing plaintiff's request for the court to "stop writ/lockout" resulting from state court proceeding and to "restore possession" of real property as barred by the Act); *Brunson v. Whelan*, No. 25-7361, 2026 WL 67585, at *3 (E.D. Pa. Jan. 7, 2026) ("To the extent that Brunson seeks to enjoin an ongoing state-court eviction or ejectment action, his claims are barred by the Anti-Injunction Act." ). Accordingly, any request for the Court to take action in his pending Municipal Court matters will be dismissed.

### B. Federal Civil Rights Claims

Lyles has not expressly requested money damages in the four corners of his civil Complaint. (Compl. at 1-6.) Even if the Complaint and attachments are liberally read to request additional, non-injunctive relief, his claims are fatally flawed and cannot proceed.[5]

---

[5] Lyles has attached a variety of documents apparently documenting his monetary difficulties, including a shut-off notice from a utility company (ECF No. 1-1 at 18-19), correspondence regarding benefits from the Pennsylvania Department of Human Services (*id.* at 53-54, 87, 121-122, 148-150) and the Social Security Administration (*id.* at 61, 72-73, 129, 140-141), and statements of withdrawals from a debit account (*id.* at 22-52, 90-120). The intended purpose of these documents is not clear, but the Court will, for the sake of argument here, liberally construe them as an attempt to demonstrate financial need or damages. Generally speaking, a court may *consider* exhibits attached to a complaint in conducting statutory screening, but a plaintiff may not state a claim by relying solely on exhibits, absent factual allegations in the complaint that explain the basis for the plaintiff's claims against the defendants. *See Bressi v. Northumberland Cnty., Child. & Youth Servs.*, No. 23-2156, 2023 WL 8866573, at *2 (3d Cir. Dec. 22, 2023) (*per*

**1. Absolute Judicial Immunity**

Judges are entitled to absolute immunity from civil rights claims based on their acts or omissions taken within their judicial capacity, as long as they do not act in complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), or are taken as a result of a conspiracy with others. *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Likewise, "grave procedural errors," "conducting a proceeding in an informal and ex parte manner," or acting "unfair[ly] or controversial[ly]" will not defeat absolute judicial immunity. *Gallas*, 211 F.3d at 769 (citations and internal quotation marks omitted). Although judicial immunity previously applied only to damages claims, "[i]n 1996, Congress amended 42 U.S.C. § 1983 to provide that 'injunctive relief shall not be granted' in an action brought against 'a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable.'" *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*) (quoting § 1983); *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197-98 (3d Cir. 2000) (observing that the 1996 amendment "implicitly recognizes that declaratory relief is available in some circumstances, and then limits the

---

*curiam*) ("[A] District Court is not obligated to discern claims from exhibits attached to a complaint."); *Est. of Egenious Coles v. Zucker, Goldberg & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016) ("[W]e cannot fault the District Court for failing to intuit the necessary factual allegations from one of the many exhibits appended to the complaint.").

availability of injunctive relief to circumstances in which declaratory relief is unavailable or inadequate").

Here, Lyles argues that the unnamed municipal court judge "colluded" with the landlord's attorney because the landlord prevailed despite there being "no way" Lyles should have lost, and that the judge and attorney shared a "secret" look. (Compl. at 4.) Yet, even accepting Lyles's contentions as true, the judge would still be entitled to absolute immunity as it applies even to allegations of legally incorrect, corrupt, or conspiring conduct by a judge. *See Mireles*, 502 U.S. at 11-12; *Dennis*, 449 U.S. at 27. All claims against the judge will be dismissed with prejudice.

**2. § 1983 Claims**

Lyles asserts that the Defendants violated his due process rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Halsey v. Pfeiffer,* 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983); *see also Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (explaining § 1983 "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." (quoting *Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979))). To state a claim under § 1983, a plaintiff must demonstrate "that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Karns v. Shanahan,* 879 F.3d 504, 520 (3d Cir. 2018) (quoting *Elmore,* 399 F.3d at 281); *see also Halsey,* 750 F.3d at 290 ("To state a claim under section 1983, a plaintiff must demonstrate that 'some person has deprived him of a federal right ... [and] that the

person who has deprived him of that right acted under color of state or territorial law.'" (quoting *Gomez v. Toledo,* 446 U.S. 635, 640 (1980))).

Lyles names as Defendants Taylor Real Estate, Dylan Taylor, Miles Taylor, Abramson & Deneberg, P.C., and David H. Deneberg. (Compl. at 3.) None of these Defendants can be liable for alleged constitutional violations under § 1983, however, because they are not state actors. Landlords, like Taylor Real Estate, Dylan Taylor, and Miles Taylor, availing themselves of the courts to evict tenants are not state actors. *See Gueson v. Feldman*, No. 00-1117, 2001 WL 34355662, at *10 (E.D. Pa. Nov. 30, 2001) ("Filing a lawsuit in state court, is not for 1983 purposes 'state action;' nor does it turn a private citizen into a state actor."); *see also Daviston v. Delaware Cnty. Tax Claim Bureau*, No. 19-5848, 2019 WL 6894398, at *2 (E.D. Pa. Dec. 18, 2019) (filing of landlord-tenant action in state court did not make a private entity a "state actor" for purposes of § 1983). The law firm and attorney, Abramson & Deneberg, P.C., and David H. Deneberg, are also not state actors. An attorney performing the traditional functions of counsel—whether privately retained, court-appointed, or a public defender—is not a state actor for purposes of § 1983. *See Gannaway v. Stroumbakis*, 842 F. App' x 725, 730 (3d Cir. 2021) (noting that "[a] privately retained attorney clearly does not act under color of state law, and . . . that 'no color of state law attache[s] to the functions of court-appointed counsel.'" ) (citation omitted). "Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999).

Lyles's § 1983 claims against Taylor Real Estate, Dylan Taylor, Miles Taylor, Abramson & Deneberg, P.C., and David H. Deneberg will be dismissed with prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

**3. Claims Under the Americans with Disabilities Act (ADA)**

Lyles claims that the Defendants discriminated against him on the basis of a disability, in violation of the ADA. His ADA claims are not plausible because he has not named an entity against which the statute applies. The ADA's protections apply to employment, public services, and public accommodations and services operated by private entities. *See generally* 42 U.S.C. §§ 12101-12203. Although the ADA is broad in its remedial effects, it is notably limited by the scope of the entities to which it applies. Title I of the ADA governs large employers, *see* 42 U.S.C. § 1211, *et seq*., Title II governs public entities, *see id.* § 1213, *et seq*., and Title III governs public accommodations, *see id.* § 12181, *et seq*. Private individuals like Dylan Taylor, Miles Taylor, and David H. Deneberg are not public entities within the scope of Title II. *See Montanez v. Price*, 154 F.4th 127, 145 (3d Cir. 2025) (stating that individuals are not subject to suit in their personal capacities under Title II of the ADA). Neither Taylor Real Estate nor Abramson & Deneberg, P.C. are subject to Title II of the ADA because they are private entities. *See* 42 U.S.C. § 12131(1) (defining a "public entity" as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) any department, agency, special purpose district, or other instrumentality of a State or States or local government."). In addition, privately owned real estate is not a "place of accommodation" within the meaning of Title III. *Grossinger v. Lichty*, No. 25-2510, 2025 WL 2111070, at *4 (E.D. Pa. July 28, 2025) (citing *Samuel v. Delaware Cnty. Hous. Auth.*, No. 22-2451, 2023 WL 4494163, at *9 (E.D. Pa. July 11, 2023) (dismissing the ADA claim with prejudice because the defendant's apartment building, regardless of whether it accepts federal funds in the form of housing vouchers, is not a public accommodation within the meaning of the ADA)), *aff'd*, No. 25-2477, 2025 WL 3553733 (3d Cir. Dec. 11, 2025) (*per*

*curiam*); *Noe v. Ray Realty*, No. 19-1455, 2020 WL 506459, at *1 n.1 (S.D.N.Y. Jan. 31, 2020) (dismissing ADA claims because the ADA does not apply to private landlords); *Stevens v. Ashley Mgmt. LLC*, No. 15-462, 2016 WL 632005, at *3 (W.D.N.Y. Feb. 17, 2016) (holding that plaintiff's ADA claim failed under both Title II and Title III because defendants did not qualify as "public entities" under Title II and plaintiff's apartment did not constitute a "place of public accommodation" under Title III).

Because the Defendants do not fall within the reach of the ADA, Lyles's ADA claims fail as a matter of law and will be dismissed with prejudice. *Bittenbender v. Fam. Servs. Ass'n of Bucks Cnty.*, No. 25-5920, 2026 WL 561128, at *10 (E.D. Pa. Feb. 26, 2026) (dismissing ADA claims with prejudice when amendment would be futile).

**4. Claims Under the Fair Housing Act (FHA)**

Lyles claims that he has been discriminated against on the basis of race and disability. (Compl. at 3, 5; ECF No. 1-1 at 1.) However, to the extent that he intended to invoke the FHA as the basis for his claims, the Complaint is totally threadbare of any facts stating a plausible claim against the landlord defendants.[6] "'The Fair Housing Act ('FHA'), passed by Congress as Title VIII of the Civil Rights Act of 1968, prohibits housing discrimination on the basis of, *inter alia,* race, gender, and national origin'— and, following the adoption of the FHAA in 1988, individuals with disabilities." *431 E. Palisade Ave. Real Est., LLC v. City of Englewood*, 977 F.3d 277, 283 (3d Cir. 2020) (quoting *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170,

---

[6] "The FHA . . . was enacted to eradicate discriminatory practices within a sector of our Nation's economy. *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 539 (2015) (citing 42 U.S.C. § 3601 ("It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States"); H.R. Rep., at 15 (explaining the FHA "provides a clear national policy against discrimination in housing"). Lyles does not allege that the attorney defendants were involved in any way with providing his housing.

176 (3d Cir. 2005)); *see also* 42 U.S.C. § 3604. "The FHA can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class." *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011); *see also Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 545 (2015) ("The Court holds that disparate-impact claims are cognizable under the Fair Housing Act."). "Generally, to prevail on a disparate treatment claim, a plaintiff must demonstrate that some discriminatory purpose was a 'motivating factor' behind the challenged action." *Cmty. Servs.*, 421 F.3d at 177. In contrast, "a plaintiff bringing a disparate-impact claim challenges practices that have a 'disproportionately adverse effect on minorities' and are otherwise unjustified by a legitimate rationale." *Texas Dep't of Hous. & Cmty. Affs.*, 576 U.S. at 524 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). Discrimination under the FHA includes failure to make repairs or delaying repairs if motivated by one's membership in a protected class. *See White v. Barbe*, 767 F. App'x 332, 334 (3d Cir. 2019) (*per curiam*) (citing 24 C.F.R. § 100.65(b)).

Lyles claims that his rights to be free from discrimination in housing have been violated, but he never identifies a race or class that purportedly served as the basis of discrimination. He likewise does not allege any disparate treatment, a "discriminatory purpose" that was a "motivating factor" behind the landlord Defendants' actions, or any facts regarding the practices of Defendants that had a disproportionate adverse effect on minorities. *Cmty. Servs.*, 421 F.3d at 177; *Texas Dep't of Hous. & Cmty. Affs.*, 576 U.S. at 524. Lyles will be permitted to amend his Complaint in the event that he can provide additional facts in support of a claim under the FHA.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Lyles's Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). All claims except the Fair Housing Act claims

against Taylor Real Estate, Dylan Taylor, and Miles Taylor are dismissed with prejudice because amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002). Lyles will be permitted to amend his Complaint as to the Fair Housing Act claims only. An appropriate order providing additional instructions regarding amendment follows.

**BY THE COURT:**

Kai N. Scott

**KAI N. SCOTT, J.**